WILLIAMS and wife, Appellants, v. CITY OF MADISON, Respondent.

*January 8—February 6, 1962.*

434

For the appellants there was a brief by *Spohn, Ross, Stevens & Pick* of Madison, and oral argument by *Frank A. Ross.*

For the respondent there was a brief and oral argument by *Alton S. Heassler,* city attorney, attorney, and *Harold E. Hanson* of Madison of counsel.

CURRIE, J.    As we view it, the issues raised on this appeal are:

(1) Does sec. 66.076 (9), Stats., vest the public service commission with exclusive jurisdiction so that the circuit court was without jurisdiction of this action?

(2) Is the 1955 ordinance invalid because beyond the power of the city to enact the same?

(3) Is the ordinance of July 14, 1955, invalid because it violates the uniformity-of-taxation provision of the Wisconsin constitution?

(4) Is this ordinance invalid because it involves an improper delegation of power to certain city officials to determine the amount of the special charges to be placed on the tax rolls and levied against plaintiffs' property?

*Jurisdiction of the Circuit Court.*

It is the contention of the city on this appeal that sec. 66.076 (9), Stats.,[1] vests exclusive jurisdiction in the public service commission to pass upon the sewerage charges here under attack, and, therefore, that the circuit court had no jurisdiction over the controversy, except upon judicial review under ch. 227, Stats., of the public service commission decision.

We deem such contention is without merit. The instant action attacks the validity of the ordinance of July 14, 1955, pursuant to which the $76.55 of special sewerage charges was levied against plaintiffs' property. The challenge to the validity of the ordinance is a question for determination by the court and not the commission. *Wm. H. Heinemann Creameries v. Kewaskum* (1957), 275 Wis. 636, 640, 82 N. W. (2d) 902.

---

[1] Sec. 66.076 (9) provides in part as follows: "Upon complaint to the public service commission by any user of the service that rates, rules, and practices are unreasonable or unjustly discriminatory, . . . the public service commission shall investigate said complaint, and if sufficient cause therefor appears shall set the matter for a public hearing upon ten days' notice to the complainant and the town, village, or city. After such hearing, if the public service commission shall determine that the rates, rules, or practices complained of are unreasonable or unjustly discriminatory, it shall determine and by order fix reasonable rates, rules, and practices and shall make such other order respecting such complaint as may be just and reasonable."

*Power of City to Enact the 1955 Ordinance.*

The testimony discloses that in the year 1956 the sewer-rental charges levied in Madison Sewer District No. 7 amounted to $3,880.50 and the further special sewer charge, equivalent to a three and one-half mill tax on all property in this district, brought in additional revenue of $5,401.55. Thus, the total revenue realized in 1956 was $9,282.05. The amount paid to the American Exchange Bank of Madison to cover principal and interest currently due on the revenue bonds was $7,282.50, leaving $1,999.55 to cover the expense of operating the sewer system in the district for the year. Therefore, it is apparent that the far-greater part of the special charges, levied under the 1955 ordinance, was devoted to repayment of the original construction costs.

Sec. 62.18, Stats., empowers cities to construct sewerage systems and to make "additions, alterations, and repairs" to the same and to provide for the payment thereof "by the city, by sewerage districts or by abutting property owners or by any combination of these methods." It is clear that, if the Waunona Way area had been without sewerage facilities at the time of the 1954 annexation, under sec. 62.18 the city could have designated the area as a separate sewerage district, installed a sewerage system therein and financed it in the same manner as Joint Sanitary District No. 7 was financed. However, plaintiffs contend that this statute has no application to the instant situation in which the sewerage system was already in existence at time of annexation.

We deem the word "additions" in sec. 62.18, Stats., is broad enough to include additional sewerage facilities acquired by annexation as well as by original construction. While it would be open to this court to interpret the statutory word "additions" as limited to those solely acquired by original construction, such an interpretation might well work an unjust and unreasonable result. For example, in the in-

stant case why should other city taxpayers be required to subsidize the cost of constructing the sewerage facilities in former Joint Sanitary District No. 7 through a city-wide tax levy when such taxpayers have already paid for the sewerage facilities serving their property by means of adequate special assessments made against their properties? The rule is that if a statute is reasonably open to any other construction, it will not be given a construction which results in unreasonableness. *Guse v. Industrial Comm.* (1925), 189 Wis. 471, 476, 205 N. W. 428, 208 N. W. 493. Therefore, we interpret the word "additions" in sec. 62.18 as embracing facilities acquired by annexation as well as by original construction.

From the foregoing, it necessarily follows that sec. 62.18, Stats., permits a city to place the annexed property, served by an "addition" to the city's sewerage facilities, in a separate sewerage district and to defray the remaining cost of such newly acquired facilities by particular charges levied only in such district.

Sec. 60.31, Stats., covers the situations where territory embracing an entire sanitary district is annexed to a city as was the case here. Sub. (1) (a) provides that the prior-existing sanitary district is dissolved by the annexation. Sub. (1), pars. (b) and (c), read:

"(b) The property of such district shall pass to the city or village and all assets and liabilities of any such district shall be assumed by such city or village. If any mortgage bonds or mortgage certificates are outstanding the transfer of the property shall be subject to such bonds or certificates. If any general obligation bonds are outstanding the city or village shall cause to be levied and collected upon all taxable property in such city or village in one sum or in annual instalments an irrepealable tax in an amount necessary to pay the interest and principal of such bonds when due.

"(c) Special assessments levied by the former district shall continue to be collected by the city or village and shall

be applied to the purpose for which the original assessment was made."

It is apparent from reading sec. 60.31 (1) (b), Stats., that the city of Madison, by reason of the annexation, was required to assume and pay the general-obligation bonds of former Joint Sanitary District No. 7, and that all property in the annexed district continued to be subject to the outstanding mortgage-revenue bonds. We cannot believe that the legislature, by the enactment of sec. 60.31, intended to create a vacuum whereby the holders of the revenue bonds would be forced, as a result of the annexation and the dissolution of the former sanitary district, to take court action and have a receiver appointed to impose and collect the charges required under the bond-issue resolution to finance the payment of the interest and principal of the bonds. In any event, we deem that the city had the power to step into the shoes of the dissolved sanitary district and levy the annual special charges required by the provisions of the resolution of December 15, 1950, for the payment of the interest and principal of these revenue bonds. Sec. 62.11 (5) [2] is broad enough to confer this power on the city council.

The point in this case which has caused this court the greatest difficulty is whether the city has the right to levy a different sewerage charge to cover operating expense in

---

[2] Sec. 62.11 (5) reads:

"Except as elsewhere in the statutes specifically provided, the council shall have the management and control of the city property, finances, highways, navigable waters, and the public service, and shall have power to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public, and may carry out its powers by license, regulation, suppression, borrowing of money, tax levy, appropriation, fine, imprisonment, confiscation, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants, and shall be limited only by express language."

the annexed former sanitary district than is levied elsewhere in the city. Sec. 62.18 (1), Stats., permits cities to levy different taxes or special charges in its various sewerage districts to cover cost of original construction and future additions, alterations, and repairs, but is silent with respect to the method of levying taxes or charges to cover operating expenses. Of the $76.55 special sewerage charges levied for 1956 against plaintiffs' property, only slightly over 20 per cent went to defray this operating expense. While the record discloses that the $76.55 was more than the sewerage-rental charge of 100 per cent of the city water bills, the amount paid by most of the city property owners, it is silent as to whether the fraction of the $76.55 which was apportioned to operating expense is more or less than a sewerage-rental charge of 100 per cent of the city water bill. Sec. 66.076 (5) [3] specifically authorizes the city to levy a sewerage-service charge to cover operating expenses of the sewerage system. Therefore, the issue is not want of power of the city to include, in the $76.55 of special sewerage charges levied against plaintiffs' property, an item to cover operating expense. Rather, it is whether the amount levied for such purpose is discriminatory as between plaintiffs and other city property owners who are required to pay a sewerage-rental charge equal to 100 per cent of their city water bills. By reason of the provisions of sec. 66.076 (9) (quoted in footnote 1), jurisdiction to determine this issue of discrimina-

---

[3] Sec. 66.076 (5) provides:

"For the purpose of making equitable charges for all services rendered by the sewerage system to the municipality or to citizens, corporations, and other users, the property benefited thereby may be classified, taking into consideration the volume of water, including surface or drain waters, the character of the sewage or waste, and the nature of the use made of the sewerage system, including the sewage-disposal plant. The charges may also include standby charges to property not connected but for which such facilities have been made available."

tory charges is vested in the public service commission, not this court. However, in fairness to plaintiffs' counsel it should be noted that the argument here advanced by plaintiffs is that of want of power, not discrimination.

*Application of Uniformity of Taxation Requirement.*

Plaintiffs further attack the validity of the 1955 ordinance on the ground that its provisions violate the rule of uniformity of taxation set forth in sec. 1, art. VIII, Const. The provision complained of is that which authorizes the assessment of special charges as taxes against property located in the annexed sanitary district. The result is that assessments against property in this district are higher than elsewhere in the city.

In an early case, *Weeks v. Milwaukee* (1860), 10 Wis. 186 (*242), this constitutional provision was held not applicable to special assessments levied to pay for street and sidewalk improvements. The court reached this conclusion because of another provision of the constitution, then found in sec. 3, art. XI, Const., which authorized the legislature to restrict the power of cities and villages with respect to "taxation" and "assessment." The word "assessment" was held to refer to the system of special taxation, which had existed for years in the older states, whereby the cost of public improvements specially benefiting particular property was assessed against such property.

However, this provision of sec. 3, art. XI, Const., relied upon in the *Weeks Case* was repealed by adoption of the home-rule amendment in 1924. Thereafter, in *Milwaukee v. Taylor* (1938), 229 Wis. 328, 282 N. W. 448, the contention was advanced that this repeal rendered special assessments made under the Kline Law (ch. 275, Laws of 1931), void under the uniformity-of-taxation requirement of sec. 1, art. VIII. The court rejected this argument and stated (p. 340):

"If the word 'taxation' as used in sec. 1 of art. VIII of the constitution in 1860 did not include special assessments, it does not include it now whether the word 'assessment' appears in the constitution or not. Certainly no one thought at the time of the adoption of the home-rule amendment that the people were destroying a power and method of assessment which had been recognized and in existence since the adoption of the constitution in 1849. The argument of counsel is ingenious but not persuasive. It is considered therefore that municipalities have the power to levy special assessments based on benefits."

Therefore, the holding of the *Weeks Case,* that the uniformity requirement does not apply to special assessments, is still the law today.

The special charges authorized by the 1955 ordinance are composed of two elements: (1) For meeting the operation and maintenance costs of the sewer system within the district, including depreciation and levies or service charges imposed on the district by the Metropolitan Sewerage Commission; and (2) for the repayment of principal and interest due on the mortgage-revenue bonds. These bonds were not issued as general-obligation bonds, but constitute a lien on the property of the sanitary district to defray the major cost of installing the sewerage facilities, which benefit all property in the district. Thus, this part of the special charges is required to be levied by the terms of the bonds and by sec. 60.31 (1) (b), Stats. While this element is not technically a special assessment, it is closely akin in nature to one. Also, the first part of the special charges bears little resemblance to a general property tax. Therefore, it is our conclusion that the uniformity-of-taxation requirement of sec. 1, art. VIII, Const., has no application to these special charges authorized by the ordinance. While the amount of the charges was partly determined on the basis of the assessed value of each parcel of property in the district, this did not convert the charges into a general property tax.

Furthermore, a valid classification does not violate the principle of uniformity. *Nash Sales, Inc., v. Milwaukee* (1929), 198 Wis. 281, 224 N. W. 126. Thus, even if the assessment were considered a tax, it could be upheld on this basis.

### Delegation of Powers.

It is also plaintiffs' contention that the 1955 ordinance is invalid because it delegates to the superintendent of waterworks and sewerage powers and duties which are by law vested in the city council.

Under the ordinance it is the duty of the superintendent to report to the city treasurer the amounts to be charged the users of the facilities or the individual parcels of land within the district. These amounts are to be "represented by service charges, special assessments, or any special charges which may have been imposed by any such sanitary district in connection with the issuance of any obligations thereof, which such amounts shall be sufficient to meet the requirements" for the categories set forth in the ordinance. In the instant case the only special assessment involved was the original $2 per foot levy. That levy is not here in issue. Thus, interpreting the ordinance in light of the instant facts, we construe it to mean that the specified categories of financial requirements must be met from the service charges and special charges imposed. The only charges imposed on plaintiffs' property for 1952 and 1953 by the former Joint Sanitary District No. 7 were the $30 yearly charge and the three and one-half mill tax. Under the ordinance these same charges were levied for 1956, resulting in the $76.55 item here in dispute. Thus, the superintendent merely computed this amount under the formula of the former district. We deem this merely a ministerial act, rather than an unlawful delegation of the discretionary power vested in the city council.

From the language of the ordinance it is not clear whether the superintendent could have reported to the city treasurer an amount which differs from or exceeds the charges imposed by the former district. The actual result in 1956 was that the amount realized from the special charges levied for that year was insufficient to cover the specified financial requirements, and the city absorbed a portion of the operation and maintenance expense from its general funds. The ordinance is silent as to what is to occur if the special charges previously levied are insufficient to cover the items specified in the ordinance. However, this possibility is not before us in the instant case, as here the superintendent merely reported the amount computed by the existing formula. Clearly, that was merely a ministerial act. It is our duty only to determine the constitutionality of the ordinance under the particular facts here before us. Under these facts there was no unconstitutional delegation of power to the superintendent.

*By the Court.*—Judgment affirmed.