CITY OF BROOKFIELD, Village of Butler, Village of
Menomonee Falls, City of Mequon, City of New Berlin,
Village of Elm Grove, Village of Germantown, Village
of Thiensville, Richard E. Ensslin, Donald Wenzel and
Raymond Gray, Plaintiffs-Respondents-Cross
Appellants,†

CITY OF MUSKEGO, Plaintiff,

v.

MILWAUKEE METROPOLITAN SEWERAGE DISTRICT,
Defendant-Appellant-Cross Respondent.††

Supreme Court

*No. 90–1263. Oral argument September 1, 1992.—Decided
November 13, 1992.*

(Also reported in 491 N.W.2d 484.)

†Motion for reconsideration denied.
††Motion for clarification granted and mandate is modified
by adding last sentence.

406

For the defendant-appellant-cross respondent there were briefs (in the court of appeals) by *Michael J. McCabe, James H. Petersen, Harold B. Jackson, Jr.,* of *Milwaukee Metropolitan Sewerage District* and *Maurcie J. McSweeney, Allen W. Williams, Jr., Richard M. Esenberg, Michael D. Flanagan* and *Foley & Lardner,* all of Milwaukee and oral argument by *Mr. Williams, Jr.* and *Mr. Flanagan.*

For the plaintiffs-respondents-cross appellants there were briefs (in the court of appeals) by *Truman Q. McNulty, Ross A. Anderson, Michael J. Lund, Christopher J. Jaekels* and *Frisch Dudek, Ltd.,* Milwaukee and

oral argument by *Mr. McNulty, Mr. Anderson* and *Mr. Lund.*

Amicus Curiae brief was filed by *Robert V. Abendroth, Marcia Rimai* and *Whyte & Hirschboeck, S.C.,* Milwaukee for the Joint Organization for Better Sewers.

Amicus Curiae brief was filed (in the court of appeals) by *Steven Levine,* Madison for *Public Service Commission of Wisconsin.*

Amicus Curiae brief was filed (in the court of appeals) by *Maryann Sumi,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general, for the State of Wisconsin.

SHIRLEY S. ABRAHAMSON, J. This is an appeal from a judgment of the circuit court for Waukesha County, Robert T. McGraw, Circuit Judge. The judgment estopped the Milwaukee Metropolitan Sewerage District (MMSD) from changing its method of charging the plaintiff municipalities for the recovery of the capital costs of MMSD's sewerage processing and water pollution abatement facilities. It further adjudged, in accordance with the special verdict of the jury, the reasonable value of the capital costs of sewerage service MMSD provided to the plaintiff municipalities. The City of Brookfield, Village of Butler, Village of Menomonee Falls, City of Mequon, City of New Berlin, Village of Elm Grove, City of Muskego, Village of Germantown, and the Village of Thiensville are the plaintiff municipalities. They receive sewerage services from MMSD, but they are located outside MMSD's statutory boundaries.[1] MMSD originally calculated the capital cost charges to the plaintiff municipalities through a

---

[1] These municipalities identified themselves in previous actions with the acronym FLOW (Fair Liquidation of Waste).

usage based formula.[2] Subsequently, MMSD attempted to change to a property value based formula.

This appeal is before the court on certification of the court of appeals. Section 809.61, Stats. 1989-90. The plaintiff municipalities brought this action to challenge MMSD's use of a property value based formula to allocate capital costs to municipalities outside MMSD's statutory boundaries. MMSD contended in the circuit court that it has statutory power to apply a property value based formula to the plaintiff municipalities and that it had changed its boundaries pursuant to sec. 66.888(1)(c)2-5, Stats. 1989-90, to include the plaintiff municipalities. It is undisputed that MMSD has authority to apply a property value based formula to users within its statutory boundaries.

Granting the plaintiff municipalities' motions for summary judgment, the circuit court held 1) that secs. 66.888(1)(c)2-5, Stats. 1989-90, were unconstitutional private, local or special laws under art. IV, secs. 18 and 31, Wis. Const.; 2) that if sec. 66.888(1)(c)2-5, were constitutional, MMSD had not complied with the statutory procedural requirements in changing its boundaries; and 3) that sec. 66.079, Stats. 1989-90, did not authorize MMSD to charge municipalities outside its boundaries on a property value basis. The plaintiff municipalities also asserted that MMSD was equitably estopped from charging them on a property value basis.

MMSD counterclaimed for the capital costs it had charged the plaintiff municipalities on a property value formula. It contended that the plaintiff municipalities

---

[2]The Villages of Germantown and Thiensville did not enter into contracts or receive service from MMSD until 1985 and 1987, respectively. Germantown's and Thiensville's original contracts with MMSD provided for capital costs to be billed on a property value basis.

were precluded from submitting evidence challenging the reasonableness of MMSD's bills, maintaining that the Public Service Commission (PSC) had exclusive jurisdiction over the reasonableness of MMSD's charges.

The circuit court rejected MMSD's challenge to its authority to hear the case. Based on special jury verdict findings of equitable estoppel and of the reasonable value of the capital costs of sewerage services provided to each of the plaintiff municipalities in the years 1985–1988, the circuit court entered judgment in favor of the plaintiff municipalities.

We vacate the circuit court's judgment and remand the cause to the circuit court for dismissal.[3] We conclude that the circuit court should have decided only the constitutionality of sec. 66.888(1)(c)2-5, Stats. 1989-90, and that the circuit court should have deferred to the PSC to determine the reasonable value of the capital cost of sewerage service provided to the plaintiff municipalities. Further, we conclude that sec. 66.888(1)(c)2-5, does not violate art. IV, secs. 18 and 31 of the Wisconsin Constitution relating to private, local and special laws.

## I.

The facts are undisputed for purposes of this appeal. MMSD provides services to municipalities within and outside its statutory boundaries. It charges for these services by allocating its operating and capital costs. Oper-

[3]We conclude that we should not "remand" the cause to the PSC because this action is not presently pending in the PSC; the parties, not the court, should bring the issues to the PSC. We direct the circuit court to dismiss the action rather than to hold it pending the PSC's determination, because review of the PSC determination should be processed in the ordinary manner pursuant to the statutory provisions for judicial review of PSC determinations.

ating costs are allocated to all customers on a usage-volumetric basis. For customers within MMSD's statutory boundaries, charges for capital costs are calculated using a property value based formula. For municipalities outside MMSD's statutory boundaries, pre-1984 contracts provided that capital costs would be allocated on a usage-volumetric basis. These contracts between MMSD and the municipalities were for a fixed period and were automatically renewable unless a party gave notice of intent to terminate. MMSD terminated the contracts in 1984.

In 1977, MMSD began an extensive water pollution abatement program to comply with the Federal Clean Water Act, 33 U.S.C. sec. 1251, *et seq.* Pursuant to statutory and regulatory requirements, MMSD prepared a Master Facilities Plan (MFP), comparing alternative water pollution abatement proposals. As required, MMSD submitted these plans to the federal Environmental Protection Agency (EPA), Wisconsin's Department of Natural Resources (DNR), and the general public for comment and hearings during a six-month period beginning November 1979.

The cost of MMSD's new water pollution abatement facilities is expected to exceed two billion dollars. Any portion of the cost not supported by state and federal grants will be allocated among MMSD's users through the capital cost component of their sewer service charges. The financial analysis in the MFP, which addressed the period 1985–2005, assumed that capital costs would be charged to municipalities outside MMSD's boundaries on the basis of usage. The MFP also stated, however, that while the financial analysis was based on several assumptions, an optimum financing method would distribute costs evenly among all of MMSD's users. The MFP explicitly referred to an

expansion of MMSD's boundaries as a means of obtaining equal cost distribution. Neither the DNR nor the EPA approvals endorsed any particular mode of financing the local share of the project.[4]

In 1980, while the MFP was under review, MMSD employed a consultant to analyze its revenue requirements. Based on the consultant's evaluation, MMSD attempted to renegotiate its contracts with the plaintiff municipalities, seeking a modification that would incorporate property value based capital charges. The plaintiff municipalities refused to modify the contracts then in effect, and MMSD continued to honor the existing contracts.

In April 1982, after the MFP was adopted and the necessary approvals were obtained, the state legislature reorganized the state's metropolitan sewerage districts. As a result of the reorganization, MMSD is the state's only metropolitan sewerage district with a first class city.[5] The 1982 law requires MMSD, as reorganized, to collect, treat and dispose of sewerage within designated boundaries. It authorizes MMSD to offset its operating and capital costs by levying taxes upon taxable property within the district, sec. 66.91(6), Stats. 1981–82. Prior to enactment of this law, MMSD lacked its own taxing and bonding authority and charges assessed against users within its boundaries were collected by Milwaukee county.

The 1982 law also permits MMSD to provide services to municipalities outside its boundaries on a con-

---

[4]The DNR and EPA were aware in 1980 that the allocation of capital costs was a controversial issue, that the financing methods in the MFP were assumptions, and that other financing methods were available.

[5]Section 20, ch. 282, Laws of 1981, eff. April 27, 1982, adopting among other provisions, secs. 66.88 to 66.918, Stats. 1981–82.

tractual basis, sec. 66.898, Stats. 1981–82, and to charge those municipalities for capital costs, sec. 66.898(4). It further authorizes MMSD to change its boundaries, sec. 66.888(1)(c)2–5, Stats. 1981–82. Although the 1982 law required MMSD to honor its then existing contracts with the plaintiff municipalities through the date of termination, it did not require that MMSD renew the contracts, nor did it impose the terms upon which MMSD would contract with or provide services to municipalities outside its statutory boundaries in the future.

In the 1980's MMSD began its attempts to charge the plaintiff municipalities for capital costs on a property value basis. Prior to August 31, 1984, MMSD notified the plaintiff municipalities of its intention to exercise the termination option under the contracts and to enter into revised contracts that would base the municipalities' capital cost charges on the same property value formula that MMSD applied to users within the district. The plaintiff municipalities refused to enter into agreements on this basis, no new contracts were signed,[6] and MMSD continued to provide services to the plaintiff municipalities. MMSD also notified the plaintiff municipalities of its intention to expand its boundaries to include them. MMSD relied on sec. 66.888(1)(c)2–5 to annex all or major portions of the plaintiff municipalities. The plaintiff municipalities commenced this action to challenge that annexation.

After the lawsuit was initiated, MMSD also based its power to change its formula for allocating capital costs to the plaintiff municipalities on a 1983 session law,[7] codified as sec. 66.898(4)(c), Stats. 1983–84. The

---

[6]Only the City of Muskego has entered into a new contract with MMSD. The City agreed to service charges which included a property value based capital cost allocation.

[7]1983 Wis. Act 27, secs. 1162*l* to 1162t.

law requires MMSD to assess the capital cost component of sewerage service charges against a contracting party on the same basis as such charges are assessed to those within its boundaries.

In 1985,[8] the legislature created sec. 66.899 and amended sec. 66.91(5)(a), to authorize MMSD to allocate capital costs through a property value based formula to noncontracting communities beyond its boundaries.

In 1988, the Wisconsin Supreme Court held both the 1983 and 1985 amendments unconstitutional under art. IV, sec. 18, Wis. Const., as private or local laws imbedded in multi-purpose bills. *City of Brookfield v. MMSD*, 144 Wis. 2d 896, 426 N.W.2d 591 (1988).

In the present case, the plaintiff municipalities challenge sec. 66.888(1)(c)2–5, enacted in 1981, as an unconstitutional private or local law. They also contend that, if the law is constitutional, MMSD did not comply with the statutory procedural requirements when it changed its boundaries. MMSD disputes these contentions and also claims authority to allocate capital costs to municipalities beyond its statutory boundaries on a property value basis under secs. 66.076, 66.91, 66.898.

The plaintiff municipalities further assert that MMSD is equitably estopped from changing its capital cost recovery program because of representations it made in conjunction with the preparation of the MFP for the proposed water treatment facilities. The jury found that the plaintiff municipalities reasonably relied on the MFP in concluding that MMSD would continue to base their capital cost charges on usage volume. Further, the jury determined the reasonable value of the capital cost of sewerage service provided to each plaintiff

---

[8]1985 Wis. Act 29, secs. 1209ar, 1209w.

municipality in the years 1985 through 1988 on a usage basis. The circuit court entered judgment on the verdict.

MMSD appeals, maintaining that sec. 66.888(1)(c)2-5 is constitutional and that the circuit court should have precluded evidence challenging the reasonableness of MMSD's charges based on a property value formula. MMSD urges that the reasonableness of its charges is a matter for determination by the PSC.

The plaintiff municipalities cross-appeal from the judgment, asserting that MMSD should be estopped from charging them on other than a usage basis through the year 2005 and that the circuit court erred in failing to order prospective relief for the period 1988 to 2005.

Because we conclude that the circuit court erred in determining the reasonableness of MMSD's charges, we do not reach the merits of several of the claims. We consider first whether the circuit court should have deferred to the PSC. We next consider whether sec. 66.888(1)(c)2-5 is constitutional under art. IV, sec. 18, requiring private and local laws to have a single subject expressed in their titles. Finally, we examine whether sec. 66.888(1)(c)2-5 is constitutional under art. IV, sec. 31, prohibiting special and private laws which address certain subjects.

## II.

First at issue is which entity should decide the question of MMSD's charges: the circuit court or the PSC.

As characterized by MMSD, the dispute centers on the amount the plaintiff municipalities must pay. MMSD contends that the legislature has delegated to the PSC the authority to determine the reasonableness of MMSD's charging the plaintiff municipalities for capital costs on the basis of a property value formula.

416

The statutes and case law seem to support MMSD's position. MMSD does not fall within the definition of public utility in sec. 196.01, Stats. 1989–90, according to the parties, and therefore it does not require PSC approval when setting charges. The legislature has provided, however, that the PSC shall investigate user complaints that sewer "charges, rules and practices" are "unreasonable or unjustly discriminatory." If the PSC determines that the "charges, rules or practices complained of are unreasonable or unjustly discriminatory, it shall determine and by order fix reasonable charges, rules and practices."[9] The statutes also specifically pro-

---

[9]Section 66.076(9), Stats. 1989–90, uses this language to apply to sewerage systems generally, and sec. 66.912(5) is applicable to MMSD. Section 66.912(5), Stats. 1989–90, provides as follows:

(5) REVIEW BY PUBLIC SERVICE COMMISSION. Except as provided under s. 66.899(2), upon complaint to the public service commission by any user that charges, rules and practices under this section are unreasonable or unjustly discriminatory, according to the standards and criteria which the commission is required to follow under state or federal law, . . . the public service commission shall investigate the complaint. If sufficient cause therefor appears, the public service commission shall set the matter for a public hearing upon 10 days' notice to the complainant and the commission. After the hearing, if the public service commission determines that the charges, rules or practices complained of are unreasonable or unjustly discriminatory, it shall determine and by order fix reasonable charges, rules and practices and shall make such other order respecting such complaint as may be just and reasonable. The proceedings under this subsection shall be governed, as far as applicable, by ss. 196.26 to 196.40. The commission may submit the factual data, reports, and analyses considered by it in establishing the charges, rules or practices subject to a complaint under this subsection. The public service commission shall give due weight to such data, reports and analyses. Judicial review of the determination of the public service commission may be had by any person aggrieved in the manner prescribed under ch. 227. If any user pays a charge and the public service commission or court,

417

vide that the capital cost component of MMSD's sewer-age service charges to contracting parties are subject to PSC review to determine whether they are unreasonable or unjustly discriminatory. Section 66.898(4)(a), Stats. 1989–90.[10] Aggrieved persons may seek judicial review of the PSC's determination. Thus the legislature has clearly and explicitly designated the PSC as the forum for resolution of disputes about the reasonableness of MMSD's capital cost charges.

In addition to the statutes cited above, the case law bolsters MMSD's position that a dispute involving the amount MMSD charges for capital costs is within the PSC's jurisdiction. Giving effect to the statutes and the PSC's expertise in rate setting, our cases acknowledge that the PSC has "exclusive jurisdiction over complaints alleging unreasonable or discriminatory sewer rates." *Kimberly-Clark Corp. v. Public Service Comm.,* 110 Wis. 2d 455, 461, 239 N.W.2d 143 (1983) ("pursuant to [stat-ute, the forerunner of sec. 66.912(5)], the PSC has exclu-sive jurisdiction over complaints alleging unreasonable or discriminatory sewerage charges."); *Williams v. City of Madison,* 15 Wis. 2d 430, 441, 442, 113 N.W.2d 395

---

on appeal from the public service commission, finds such charge, after reviewing a complaint filed under this subsection, to be exces-sive, the district shall refund to the user the excess plus the interest thereon computed at the rate then paid by the district for borrowing funds for a term of one year or less.

[10]Section 66.898(4)(a), Stats. 1989–90, provides as follows:

(4) SERVICE CHARGES FOR CAPITAL COSTS. (a) As part of any contract executed under this section, the commission may assess reasonable and just sewerage service charges against the contracting party with respect to capital costs. These sewerage service charges are subject to review under s. 66.912. The schedule of sewerage ser-vice charges with respect capital costs used in contracts executed under this section shall be uniform with the system used to recover capital costs within the district.

(1962) ("jurisdiction to determine this issue of discriminatory charges is vested in the public service commission, not this court."); *W.H. Heinemann Creameries v. Kewaskum,* 275 Wis. 636, 640, 82 N.W.2d 92 (1956) ("we are not here concerned with the amount of the questioned assessment because the legislature has constituted the public service commission as the exclusive tribunal to pass on that issue.").

■

Furthermore, our court has concluded that when contracts for sewerage services terminate, as did the contracts in the case at hand, the "proper procedure to be followed" is for the district to set rates "subject to appeal to the public service commission by the user." *Village of Butler v. Renner Mfg. Co.,* 70 Wis. 2d 1, 8, 233 N.W.2d 380 (1975). We thus conclude that MMSD's arguments have merit.

■

In contrast, the plaintiff municipalities characterize the case as centering on MMSD's authority to allocate capital costs on the basis of a property value formula. According to the plaintiff municipalities, a determination of MMSD's authority requires interpretation of the statutes and the Wisconsin Constitution and does not involve rate setting or the reasonableness of MMSD's charges. The plaintiff municipalities challenge MMSD's authority by attacking the constitutionality of sec. 66.888(1)(c)2-5 under art. IV, secs. 18 and 31, and by attacking MMSD's interpretation of the statutes. The plaintiff municipalities assert that these are issues independent of MMSD's charges. We conclude that the plaintiff municipalities correctly assert that a court has the capacity to decide issues of legal authority for ratemaking, aside from review of the rates themselves. *Williams v. City of Madison,* 15 Wis. 2d 430, 437, 441,

419

442, 113 N.W.2d 395 (1962); *W.H. Heinemann Creamer-ies v. Kewaskum,* 275 Wis. 636, 640, 82 N.W.2d 92 (1957).

Neither party's argument fully captures the complex nature of this dispute. As the PSC amicus brief explains, the case involves issues of both reasonableness of charges (an issue which should be brought initially to the PSC) and MMSD's ratemaking authority under the statutes and constitution (issues ordinarily within the expertise of the courts).

When both a court and an administrative agency have jurisdiction over resolution of issues in a dispute, a question of primary jurisdiction arises. *McEwen v. Pierce County,* 90 Wis. 2d 256, 268, 279 N.W.2d 469 (1979). Primary jurisdiction is a doctrine of comity. The purpose of the primary jurisdiction doctrine is to promote the proper relationship between administrative agencies and courts. *Wisconsin Collectors Ass'n Inc. v. Thorp Finance Corp.,* 32 Wis. 2d 36, 44, 145 N.W.2d 33 (1966).

The decision for a circuit court in a case involving the doctrine of primary jurisdiction is not whether the court has jurisdiction but whether it should exercise its discretion to retain jurisdiction. *Wisconsin Collectors Ass'n Inc. v. Thorp Finance Corp.,* 32 Wis. 2d 36, 44, 145 N.W.2d 33 (1966). The question on appeal is whether the circuit court properly exercised its discretion in retaining jurisdiction. *McEwen v. Pierce County,* 90 Wis. 2d 256, 271, 279 N.W.2d 469 (1979).

This court has discussed the doctrine of primary jurisdiction in several cases and has distinguished those issues best left to administrative agencies and those best

resolved by the courts. We have said that when factual issues are significant, the better course may be for the court to decline jurisdiction; when statutory interpretation or issues of law are significant, the court may properly choose in its discretion to entertain the proceedings. We have cautioned the circuit court to exercise its discretion with the understanding that the legislature created the agency in order to afford a systematic method of fact finding and policymaking and that the agency's jurisdiction should be given priority in the absence of a valid reason for judicial intervention.

Administrative agencies are designed to provide uniformity and consistency in the fields of their specialized knowledge. When an issue falls squarely in the very area for which the agency was created, it is sensible to require prior administrative recourse before a court decides the issue. *McEwen v. Pierce County,* 90 Wis. 2d 256, 271-72, 279 N.W.2d 469 (1979); *Wisconsin Collectors Ass'n,* 32 Wis. 2d at 47; *General Tel. Co. v. Auto-Owners Ins.,* 140 Wis. 2d 10, 22, 409 N.W.2d 133 (Ct. App. 1987).

Primary jurisdiction presents a discretionary decision, and "the court must consider which course would best serve the ends of justice." *Wisconsin Collectors Ass'n,* 32 Wis. 2d at 45. In deciding to exercise jurisdiction in this case, the circuit court explained that it would not defer to the PSC because "this matter has . . . languished enough in the system and should be disposed of as expeditiously as possible." [11]

---

[11] *Town of Brookfield v. Milwaukee Metropolitan Sewerage District,* Waukesha County Circuit Court, No. 83-CV-0296 (March 21, 1989) (Slip Op. at 4).

While we commend the circuit court for its concern with speedy adjudication, we conclude that the circuit court did not give adequate consideration to several relevant factors. First of all, since the circuit court did not decide the reasonableness of charges for capital costs after 1988, the circuit court's decision in this case would not finally settle the dispute; additional proceedings would be required.[12]

Furthermore the circuit court did not consider the PSC's expertise in ratemaking, or its familiarity with the operating procedures and customs of the industry, or the fact that the legislature had vested the initial power to determine unreasonable and discriminatory sewerage charges, rules and practices in the PSC, not in the courts. The question posed to the jury by the circuit court, namely "the reasonable value of the capital cost of sewerage service provided to [the plaintiff municipalities]," was the very issue the legislature had reserved for initial determination by the PSC. The legislature had mandated that the courts' role in addressing the reasonableness of sewer service charges is to review the decisions of the PSC, not to make the initial determination.

---

[12]After the commencement of the present action in the Waukesha County Circuit Court, a non-municipal user of MMSD's services filed a complaint with the PSC, challenging MMSD's allocation of capital costs. After the circuit court proceeding concluded, the PSC proceeded to a hearing and decided that MMSD's charging municipalities outside its boundaries for capital costs on the basis of property values is within its authority and is not unreasonable or unjustly discriminatory. The PSC ruled on statutes the circuit court in the case at bar did not discuss and on the reasonableness of charges after 1988, an issue the circuit court did not reach in the case at bar. *Investigation of Complaint Concerning the Rates and Practices of the Milwaukee Metropolitan Sewerage District,* Public Service Commission No. 9308–SR–100 (Jan. 25, 1991).

While the interpretation of statutes (here determining MMSD's statutory authority) is ordinarily an issue within the expertise of the courts, in this case the statutes appear to be inextricably interwoven with issues of sewer service charges, rules and practices. Interpretation of the statutes in this case may require an understanding of certain concepts of utility law and of the charges, rules and practices of sewerage districts, subjects within the expertise of the PSC. MMSD's brief asserts, for example, that the circuit court misconstrued sec. 66.076 which, according to the MMSD, uses the term "classified" in its technical meaning in utility law. While judicial review may be sought after a PSC decision, the administrative agency's analysis of the statutory issues will often aid the court in its decision-making process.

All these factors point toward the court's deferring to the PSC in the case at hand to advance the legislative goal in creating the PSC: fact-finding capability, and uniformity and consistency in the field of its specialized jurisdiction and knowledge. *McEwen,* 90 Wis. 2d at 272.

The circuit court failed to engage in a reasoned consideration of these relevant factors, and its decision to retain jurisdiction of the rate setting and statutory issues therefore constitutes an *erroneous exercise of discretion. Hedtcke v. Sentry Ins. Co.,* 109 Wis. 2d 461, 471, 326 N.W.2d 727 (1982). We use the phrase *erroneous exercise of discretion* in place of *abuse of discretion,* a phrase which we have used in numerous prior cases to describe a circuit court's error in reaching a decision involving discretion. Henceforth this court will use *erroneous exercise of discretion,* in place of *abuse of discretion.* We are not changing the standard of review, just the locution. We have come to believe that the term *abuse of discretion* carries unjustified negative connotations.

On the basis of our review of the relevant factors, we hold that the circuit court should have deferred to the PSC for its determination of MMSD's statutory authority to charge for capital costs on the basis of property value formula and of the reasonableness of the charges.

Resolving the constitutionality of sec. 66.888(1)(c)2-5, Stats. 1989-90, however, presents different considerations. This issue entails a determination of the legislature's compliance with a constitutional mandate concerning the subject and title of a bill. As such, this issue is separate and distinct from the other issues in the case. It is not related in any way to ratemaking or the reasonableness of charges, practices or rules. Nor is the legislature's delegation of authority to the PSC implicated in any way if a court decides the constitutionality of this statute. We therefore exercise our discretion to retain jurisdiction over the constitutional issue.

### III.

The parties in this case agree that sec. 66.888(1)(c)2-5 regulating the boundaries of a metropolitan sewerage district is a private or local law under art. IV, sec. 18, Wis. Const. The power to redefine boundaries is not granted to all metropolitan sewerage districts; the section is applicable only to MMSD.[13]

The parties dispute whether chapter 282, Laws of 1981, which enacted sec. 66.888(1)(c)2-5, Stats.

---

[13]For a discussion of private or local laws under art. IV, sec. 18, *see, e.g., Davis v. Grover*, 166 Wis. 2d 501, 480 N.W.2d 460 (1992); *Brookfield v. MMSD*, 144 Wis. 2d 896, 426 N.W.2d 591 (1988); *Milwaukee Brewers v. DH&SS*, 130 Wis. 2d 79, 387 N.W.2d 254 (1986), and cases cited therein.

1981–82, violates the Wisconsin Constitution's restrictions on private or local laws set forth in art. IV, sec. 18.

Article IV, sec. 18, provides that "no private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title." An analysis of the constitutionality of a private or local law under section 18 requires a two-step inquiry: Does the law embrace more than one subject? If it embraces only one subject, is the subject expressed in the title?

In adopting art. IV., sec. 18, the framers had two purposes: 1) to guard against combining distinct and unconnected matters in a single bill, thereby uniting various interests in support of the whole bill when they would not unite in favor of the individual matters if considered separately, and 2) to prevent legislators and the public from being misled by the title of a private or local bill. The constitutional amendment promotes independent legislative consideration of separate, unrelated, and distinct proposals. *Durkee v. City of Janesville,* 26 Wis. 697, 701 (1870); *Milwaukee County v. Isenring,* 109 Wis. 9, 23, 85 N.W. 131 (1901). The framers trusted that if a bill affecting private or local interests had a single subject and a title which called attention to the subject matter, legislators and the people affected by the bill would be alerted and could intelligently participate in considering the bill.[14]

---

[14]For a discussion of the history of this constitutional provision, *see Soo Line R.R. Co. v. Dept. Transportation,* 101 Wis. 2d 64, 70–72, 303 N.W.2d 626 (1981). For discussions of similar provisions incorporated in other state constitutions, *see* Theodore Sedgewick, *A Treatise on Statutory and Constitutional Law,* Ch. III, (2 ed. 1874); James DeWitt Andrews, *A Treatise on the Jurisprudence, Constitution and Laws of the United States,* secs.

■■■■ The decision whether a bill contains more than one subject depends in large part on the level of generality with which the court characterizes the subject of the bill. As the breadth of characterization of the subject increases, so does the likelihood that all the provisions of the bill will be encompassed in that single subject. Conversely, describing the subject of the bill more narrowly increases the likelihood that one or more provisions of the bill may be regarded as not encompassed in the single subject. Nothing in the constitution specifically instructs the court about the level of generality it should use in characterizing the subject of a bill.

■■■■ The guiding rule for determining the level of generality in describing the subject matter of a bill is set forth in our early cases. The unity of the subject must be sought in the objective which the act proposes to accomplish and not in the details provided to reach that end. *Evans v. Sharp,* 29 Wis. 564, 570 (1872); *State ex rel. Hammann v. Levitan,* 200 Wis. 271, 276, 228 N.W. 140 (1929). The constitutional provision is to be liberally construed, and while the court should guard against the mischiefs art. IV, sec. 18 intended to remedy, " 'reason and sound policy demand that we shall not, by technical interpretation, embarrass legislation . . ..' " *Evans v. Sharp,* 29 Wis.. 564, 570, 572 (1872) (quoting *Mayor v. State of Maryland,* 30 Md. 112 (1869), and cases from other states with approval).

■■■■ The phrase "single subject," as used in art. IV, sec. 18, does not limit a private or local law to only one section or one thought. Such an interpretation would

and 211 (1900); and Lyman H. Cloe and Summer Marcus, *Special and Local Legislation,* 24 Ky. L.J. 351 (1936).

multiply bills "like the leaves of the forest" and lead to confusion and uncertainty. *Mills v. Charleton,* 29 Wis. 400, 408 (1872).

■■■■

Under this court's long standing interpretation of art. IV, sec. 18, a bill has a single subject if all of its provisions are related to the same general purpose and are necessarily or properly incident to that purpose. Provisions subsidiary to the primary purpose of a bill, and naturally or necessarily connected with that purpose, "may be included in the bill without rendering the act double or multifarious in the sense of the constitutional provision." *Mills v. Charleton,* 29 Wis. 400, 407 (1872). *See also Phillips v. Albany,* 28 Wis. 340, 356 (1871).[15] A text on statutory interpretation summarizes the rule on single subject matter bills as follows: "To invalidate a statute for dual or multiple subject matter, the variance in the provisions of an act must be palpable and totally

---

[15]Other states apply a similar construction to the "single subject" provisions of their state constitutions. *See, e.g., Porten Sullivan Corp. v. State,* 318 Md. 387, 568 A.2d 1111, 1115–1122 (1990) (single subject requirement is intended to prevent the combination in one act of several and distinct incongruous subjects); *Blanch v. Suburban Hennepin Reg. Park Dist.,* 449 N.W.2d 150 (Minn. 1989) (all matters should fall under some one general idea, be so connected with or related to one another either logically or in popular understanding, as to be parts of, or germane to, one general subject); *State v. Iowa Dist. Court,* 410 N.W.2d 684 (Iowa 1987) (to be held unconstitutional, an act must encompass two or more dissimilar or discordant subjects that have no reasonable relationship to one another); *Wall v. Board of Elections of Chatham City,* 242 Ga. 566, 250 S.E.2d 408 (1978) (subject matter as used in the Constitution is given a broad and extended meaning to allow the legislature to include in one bill all subjects having a logical or natural connection).

irreconcilable." 1A SUTHERLAND STAT. CONST. sec. 18.06, p.43 (Sands 4th ed. 1985 Rev.).

In *State ex rel. Hammann v. Levitan,* 200 Wis. 271, 228 N.W. 140 (1929), the court held that a bill authorizing the construction of a dam, the control of flood waters, and the establishment of a fish hatchery and fur farm on the Horicon marsh embraced a single subject, namely the conservation commission's institution of a wild-life refuge on Horicon marsh. In *State ex rel. Ervin v. County Board,* 163 Wis. 577, 158 N.W. 338 (1916), the court concluded that an act governing the detachment of territory and the creation of new towns embraced a single subject, the creation of the new towns.[16]

The parties dispute whether chapter 282 embraces more than one subject and whether the single subject is expressed in the title. Chapter 282 is 34 pages long and consists of 48 sections. It repeals and amends existing sections of the statutes and creates numerous new sections. The plaintiff municipalities contend that ch. 282 is a multi-subject bill, improperly embracing "a panoply of different subjects." Respondent's Brief at 46. We disagree with this conclusion.

▪

Upon analysis of chapter 282, we conclude that the chapter passes muster under art. IV, sec. 18. The primary purpose of chapter 282 is to regulate the organization, governance, and financing of a metropolitan sewer-

---

[16]In *State ex rel. Joint School District v. Nyberg,* 183 Wis. 215, 197 N.W. 724 (1924), upon which the plaintiff municipalities rely, the court held that an act relating to school districts embraced more than one principal or major subject. The *Nyberg* opinion did not refer to the numerous cases in which the court discussed the appropriate interpretation of the constitutional restriction. In addition, the court did not set forth its analysis. We therefore do not find this case helpful.

age district. Each of the multiple sections has a logical and natural connection with the primary or leading subject of the chapter. All are connected with and subsidiary to the purpose of the bill; all are germane to the subject of the chapter. No section of the bill is incongruous or irreconcilable with the purpose of the chapter. No section encompasses a dissimilar or discordant subject that has no reasonable relation to the other sections. We therefore conclude that chapter 282 embraces a single subject.

We must now examine the title of the chapter to determine whether it expresses the single subject. The title must "insure that the legislature and the people of the state are advised of the real nature and subject matter of the legislation being considered to avoid fraud or surprise." *Soo Line R. Corp. v. Transportation Dept.,* 101 Wis. 2d 64, 72, 303 N.W.2d 626 (1981).

A court is not to set an act aside or declare it void because the subject was not as fully or as unequivocally expressed in the title as it might otherwise have been. *Mills v. Charleton,* 29 Wis. 400, 410 (1872). "The title to an act must be liberally construed, giving all reasonable leeway for the exercise of legislative discretion." *Milwaukee County v. Isenring,* 109 Wis. 9, 24, 85 N.W. 131 (1901). Because the custom in this state has "always been to state the subject [in the title] in the most general terms and with the fewest possible words," the court has presumed that the "framers of the constitution intended the legislature" to conform to that custom of short, general titles. *Mills v. Charleton,* 29 Wis. 400, 409 (1872).

The constitution requires that the title to a private or local law "when liberally construed, shall suggest the

subject thereof . . .." *Milwaukee County v. Isenring,* 109 Wis. 9, 22, 85 N.W. 131 (1901). A title is insufficient only if it fails to reasonably suggest the purpose of the act it covers, or if a reading of the act with the full scope of its title in mind discloses a provision clearly outside the title. *Milwaukee County v. Isenring,* 109 Wis. 9, 24, 85 N.W. 131 (1901); *Diana Shooting Club v. Lamoreux,* 114 Wis. 44, 50-51, 89 N.W. 880 (1902); *Columbia County v. Wisconsin Retirement Fund,* 17 Wis. 2d 310, 323, 116 N.W.2d 142 (1962); *Soo Line,* 101 Wis. 2d at 78.[17]

---

[17]A nineteenth century treatise on statutory interpretation states that "The subject expressed in a title includes not only all matters which are constituent parts of it, but all matter directly incidental to it." J.G. Sutherland, *Statutory Construction* sec. 95, p. 107 (1891). The text states, by way of example, that "An act 'concerning drainage' " includes for this reason "assessments upon land benefitted to pay the expense." *Id.*

A more recent edition of this text sets forth the general test to determine whether the title is sufficient as follows: "The general test is whether the title is uncertain, misleading or deceptive to the average reader, and if the court feels that the title is sufficient to direct a person of ordinary, reasonably inquiring mind to the body of the act, compliance with the constitution has been effected." 1A Sutherland, *Stat. Const.* sec. 18.02, p. 27 (notes omitted) (Sands 4th Ed. 1985 rev. ed.).

Other states apply similar analysis to constitutional provisions governing bill titles. *See, e.g., State v. Iowa Dist. Court,* 410 N.W.2d 684, 686 (a title is sufficient, even if it is broad; it must give fair notice of a provision in a body of an act; the matter cannot be utterly incongruous to the general subject matter of the statute); *Allen v. Girard,* 155 Ariz. 134, 745 P.2d 192, 194-95 (Ariz. App. 1987) (statute is constitutional when the challenged provision directly or indirectly relates to the subject of the title and has a natural connection therewith); *Spidle v. Livingston Construction Co., Inc.,* 311 Pa. Super. 201, 457 A.2d 565 (1983)

Section 66.888(1)(c)2-5, Stats. 1981-82, enacted by chapter 282 relates to the boundaries of MMSD. The plaintiff municipalities assert that to comply with the title requirement of art. IV, sec. 18, the title to chapter 282 should have specifically referred to MMSD's boundaries. Respondent's Brief at 44. They contend that the Act's title: "An Act . . . relating to financing for town sanitary districts, creating a metropolitan sewerage commission, increasing the financing powers of the commission, providing for the appointment of commissioners and providing penalties" fails to state the Act's subject because it "makes absolutely no reference to boundary expansion." Respondent's Brief at 44.

We consider the plaintiff municipalities' interpretation of the title requirement in art. IV, sec. 18, to be overly restrictive. The title of a law is not intended to be an index of its contents and need not detail its every provision. *Columbia County v. Wisconsin Retirement Fund,* 17 Wis. 2d 310, 323, 116 N.W.2d 142 (1962).[18]

(the constitution requires the title to put persons of a reasonably inquiring mind on notice of the general subject matter of the act).

[18]The Wisconsin Legislative Reference Bureau's 1981-82 Bill Drafting Manual instructed drafting attorneys that the "relating clause" (text accompanying list of numerical sections affected) "should be as concise as possible," while conveying the bill's subject. Wisconsin Legislative Reference Bureau, Wisconsin Bill Drafting Manual 48, Rule 4.02(2) (1981-82). On the required level of specificity the manual instructed that "Titles and section headings for material relating to one subject matter should be sufficiently specific to distinguish them from other existing or proposed statutory material concerning a different subject matter." Wisconsin Bill Drafting Manual 58, Rule 4.12(4).

The current version of the manual instructs bill drafting attorneys as follows:
4.02 BILL TITLE. The bill title lists most of the statute

The reference in chapter 282's title to the metropolitan sewerage commission suggests to the reader that the commission is associated with a metropolitan sewerage district. It is self-evident that a district would have boundaries. It is well within the realm of reasonable expectations that an act creating an entity with boundaries may provide for changes in those boundaries. This expectation is particularly true in the case of a sewerage district. Wisconsin law has provided since at least 1891 that sewerage commissioners may expand their districts' boundaries. Section 24, ch. 401, Laws of 1891.[19]

We acknowledge that the legislature could have expressly stated in the title to chapter 282 that the act provided for boundary expansion. Its failure to do so, however, is not fatal. "The degree of particularity which must be used in the title of an act rests in legislative discretion, and is not defined by the constitution. There are many cases where the object might with great propri-

---

sections and all other laws treated by the bill, states the nature of the treatment accorded each, and states the general subject matter to which the bill relates.

(2) Relating Clause. (a) *Generally.* The purpose of the relating clause is to describe the proposal's *subject matter,* not what the proposal does. The relating clause should be as concise as possible but still enable the subject matter to be distinguished from that of other proposals . . ..

[19]The reference in the title to financing powers of the commission likewise suggests that the commission has authority to raise revenue from certain constituents. It should be evident that the constituents affected would be those within the commission's service area and that the service area would have boundaries. Again, it is not beyond the ken of the reader that the commission's financing powers should suggest that those powers would be exercised within a defined area that might have changing boundaries.

ety be more specifically stated, yet the generality of the title will not be fatal to the act, if by fair intendment it can be connected with it." *State ex rel. Hammann v. Levitan,* 200 Wis. 271, 276 (1929).

We conclude that chapter 282 of the Laws of 1981 had a single subject and that subject was reflected in its title. The statute, therefore, does not run afoul of the constitutional requirements of art. IV, sec. 18.

## IV.

We turn next to the question whether sec. 66.888(1)(c)2-5, Stats. 1989-90, is unconstitutional under art. IV, sec. 31, Wis. Const. The circuit court concluded that the statute violated art. IV, sec. 31, but did not set forth its rationale.

Article IV, sec. 31, states that "the legislature is prohibited from enacting any special or private laws in the following circumstances . . . .. 7th. For granting corporate powers and privileges, except to cities."

The plaintiff municipalities contend that sec. 66.888(3), conferring upon MMSD power to redefine its boundaries, confers corporate status upon MMSD contrary to the prohibitions of sec. 31. They argue that sec. 31 expressly prohibits the legislature from granting the right of annexation and boundary definition to MMSD (which is not a city) by a special or private law. MMSD asserts, among other arguments, that the statute does not grant it corporate powers.

Like art. IV, sec. 18, sec. 31 was enacted in response to legislative abuses. In 1877, six years after the constitutional amendment adopting sec. 31, the court explained the purpose of this constitutional provision. The amend-

ment was to insure that legislation would promote the general welfare and further statewide interests as opposed to private concerns and that general laws would replace special enactments to restore uniformity to municipal law. *Kimball v. Rosendale*, 42 Wis. 407, 415 (1877).

The court has acknowledged the difficulty of drawing an accurate line between corporate powers and privileges which the legislature may and may not grant by special laws or private laws. *State ex rel. Baltzell v. Stewart*, 74 Wis. 620, 627, 43 N.W. 947 (1889). The court has also recognized that the meaning of the phrase "special or private laws" under sec. 31 is determined through a case-by-case and act-by-act analysis which takes into account the historical purpose of the constitutional provision.

In determining the constitutionality of a statute under sec. 31, "the courts have been motivated by such polar factors as curing the abuses which prompted the original 1871 amendment and the overwhelming desirability of the particular statute under consideration." *State ex rel. La Follette v. Reuter*, 36 Wis. 2d 96, 112, 113, 153 N.W.2d 49 (1967) (quoted with approval in *State ex rel. Warren v. Nusbaum*, 59 Wis. 2d 391, 447–48, 208 N.W.2d 780 (1972)).

Recognizing that the purpose of sec. 31 is to insure that legislation fosters state-wide public interests, the court has interpreted sec. 31 as including a "public purpose" doctrine. The court has interpreted sec. 31 as permitting the legislature to enact a special or private law granting corporate powers to a local entity if the act's main purpose is to enable the local entity to exercise the

434

powers for the promotion of the public health and welfare. *State ex rel. Baltzell v. Stewart,* 74 Wis. 620, 628, 43 N.W. 947 (1889). As we explained in *State ex rel. Warren v. Nusbaum,* 59 Wis. 2d 391, 447–48, 208 N.W.2d 780 (1972), art. IV, sec. 31 "was not meant to deny the legislature the authority to grant limited corporate powers to the entities it creates to promote a public and state purpose." See also *State Medical Society of Wisconsin v. Commissioner of Insurance,* 70 Wis. 2d 144, 149, 233 N.W.2d 470 (1975).[20]

Even if we were to assume that sec. 66.888(1)(c)2–5, Stats. 1989–90, grants corporate powers to MMSD within the meaning of sec. 31, the law withstands a challenge under sec. 31 because MMSD is exercising a police power for the promotion of public health and welfare.

It is beyond question that sewerage services promote the public health and well-being. In *State ex rel. Baltzell v. Stewart,* 74 Wis. 620, 626, 43 N.W. 947 (1889), the court stated that "it is conceded that the police power of the state extends to the promotion of the health, comfort and good order of the citizens; and it

---

[20]In the early cases, the public purpose doctrine was applied to annul only those special or private laws that were restricted to private concerns. *See State ex rel. Baltzell v. Stewart,* 74 Wis. 620, 626–628, 43 N.W. 947 (1889), accepting counsel's contention that ". . . if the [special] act does grant certain corporate powers, they are not of that nature and character which it was the intent of the amendment to prohibit the legislature from granting by a special act."

In more recent cases, the public purpose doctrine appears to have evolved into an element of the determination of whether a law is "special or private." *See, e.g., State ex rel. La Follette v. Reuter,* 36 Wis. 2d 96, 113, 153 N.W.2d 49 (1967).

cannot be successfully denied that drainage laws are enacted mainly to secure these ends." See also *Donnelly v. Decker,* 58 Wis. 461, 17 N.W. 389 (1883). Thus sec. 66.888(1)(c)2-5 comes within the "public purpose" doctrine of sec. 31 and does not violate that provision.

We conclude that sec. 66.888(1)(c)2-5, Stats. 1989-90, survives the challenge under art. IV, sec. 31.[21]

For the reasons set forth, we vacate the judgment of the circuit court and remand the cause to the circuit court to dismiss the action. We further hold that sec. 66.888(1)(c)2-5 is not unconstitutional under art. IV, secs. 18 and 31 Wis. Const.

*By the Court.*—The judgment of the circuit court is vacated and the cause remanded to the circuit court for dismissal. Such dismissal is without prejudice to the District's right to refile within 60 days collection actions for 1985, 1986, 1987, 1988 and subsequent charges.

Justices DONALD W. STEINMETZ and JON P. WILCOX, took no part.

---

[21] We defer to the PSC to determine whether MMSD complied with the procedural requirements set forth in sec. 66.888(1)(c)2-5 when it changed its boundaries. MMSD contends that it adopted a rule in compliance with the statutory requirement that communities likely to receive sewer service from MMSD within 10 years be included in any revised boundaries. Like the reasonableness of charges and practices, the reasonableness of MMSD's rules are by statute matters left initially to the PSC.