**Sergio ALEMAN, David Alcover–Saez, Jose A. Diaz, Hector Pagan, and Sylvia Rodriguez, Plaintiffs,**

v.

**MILWAUKEE COUNTY, Milwaukee County Sheriff Robert B. Kliesmet, and Milwaukee Deputy Sheriffs' Association, Defendants.**

No. 96–C–1126.

United States District Court, E.D. Wisconsin.

Feb. 8, 1999.

Peter Gugon Earle, Boynton & Earle, Milwaukee, WI, for Plaintiffs.

Timothy R. Schoewe, Deputy Corporation Counsel, Milwaukee, WI, for Milwaukee County & Sheriff Kliesmet.

Franklyn M. Gimbel, Kathryn A. Keppel, Gimbel, Reilly, Guerin & Brown, Milwaukee, WI, for Milwaukee Deputy Sheriffs' Assn.

## DECISION AND ORDER (1) GRANTING, IN PART, PLAINTIFFS' MOTION TO RECONSIDER JULY 22, 1998 ORDER; (2) GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE AFFIDAVITS; and (3) DENYING DEFENDANTS' MOTION TO STRIKE AFFIDAVITS

REYNOLDS, District Judge.

## I.  INTRODUCTION

The court granted summary judgment in favor of the defendants in this action on July 22, 1998.  Plaintiffs now move the court to reconsider that decision pursuant to Fed. R.Civ.P. 59.  Reconsideration should be granted, plaintiffs argue, because the court did not consider important evidence regarding the overtime practices of the Sheriff's Department.  Along with their motion for reconsideration, plaintiffs also move for leave to file affidavits in support of reconsideration. In response, defendants Milwaukee County and Sheriff Robert B. Kliesmet (collectively "the County Defendants") have moved to strike the proposed affidavits, and to also strike the February 11, 1998 affidavit of plaintiffs' counsel Peter Guyon Earle ("the Earle affidavit").

The court grants in part the plaintiffs' motion to reconsider the July 22, 1998 order. Upon reconsideration of its July 22, 1998 order, the court denies summary judgment as to the County Defendants, but does not disturb its conclusion granting summary judgment in favor of defendant Milwaukee Deputy Sheriffs' Association ("MDSA").  The court also grants the plaintiffs' motion to file affidavits, and denies the defendants' motion to strike the proposed affidavits and motion to strike the Earle affidavit.

## II.  FACTUAL BACKGROUND

With one important exception, to be discussed below, the facts of this case are adequately described in the court's July 22, 1998 summary judgment order.  Only facts rele-

vant to the present order will be discussed here.

The plaintiffs in this case are deputy sheriffs employed by defendant Milwaukee County. Defendant Robert Kliesmet, sued here in his official capacity, was the sheriff of Milwaukee County until approximately January 5, 1997. Defendant MDSA is a labor organization that engages in collective bargaining on behalf of Milwaukee's deputy sheriffs.

The plaintiffs belong to the employment classification "Deputy Sheriff–I Bilingual (Spanish)" (hereinafter that classification, as distinguished from plaintiffs themselves, will be referred to as "bilingual deputies" or "Deputy Sheriff–Bilingual"). Members of this classification are permanently assigned to duty at the Milwaukee County Jail ("the Jail"). The job description for this classification requires members to be proficient in the use of the Spanish language. The classification consists of only six positions, and plaintiffs are five of those six employees. The position was created in 1992. Since that time, all persons hired for the position have been Latino/as of various Latin American descent.

Plaintiffs allege that defendants discriminated against them by imposing terms and conditions of employment upon them that were different than those imposed on similarly situated deputies in other, predominately non-Latino, employment classifications. This discrimination was perpetuated, plaintiffs claim, when Milwaukee County reclassified various deputy sheriff positions as part of a May 16, 1997 collective bargaining agreement. Prior to that agreement, two classifications of deputies—the bilingual deputies and the "Deputy Sheriff" classification—were assigned to permanent duty at the Jail. The 1997 collective bargaining agreement consolidated various deputy sheriff classifications, including the "Deputy Sheriff" classification, into one new classification titled "Deputy Sheriff I" (hereinafter "non-bilingual deputies"). As a result of the consolidation, those deputies formerly classi-

fied as "Deputy Sheriff" are no longer restricted to assignment at the Jail, and are now eligible for transfer to other assignments such as the patrol and criminal investigation divisions. The bilingual deputies, however, were not included in the consolidation of deputy sheriff classifications.[1] The bilingual deputies remain on permanent assignment to the Jail, an assignment plaintiffs perceive as "the least desirable assignment within the Sheriff's Department." (Feb. 11, 1998 Pls.' Proposed Findings of Fact ("PPFOF") at 10 ¶ j.)

In support of their current motion, plaintiffs highlight one important piece of evidence that was not considered in the court's previous summary judgment order. Plaintiffs assert the Sheriff's Department has not permitted the bilingual deputies to work any overtime hours, while non-bilingual deputies are regularly afforded this benefit. In fact, plaintiffs contend that non-bilingual deputies often work overtime hours by filling-in for absent bilingual deputies, while bilingual deputies are not permitted to do the same. According to plaintiffs, this practice results in periods where there is no bilingual coverage at the Jail. Plaintiffs urge the court to find that this practice supports an inference of discriminatory intent sufficient to withstand defendants' summary judgment motion.

## III. DISCUSSION

### A. Findings of Fact Under the Local Rules

In its previous ruling on summary judgment, the court did not consider plaintiffs' evidence regarding the overtime treatment of bilingual deputies because that evidence was not set forth in plaintiffs' findings of fact. The Local Rules of the Eastern District of Wisconsin ("Local Rules") require parties to submit proposed findings of fact to the court in conjunction with a motion for summary judgment. See Local Rule 6.05 (E.D.Wis.). The party moving for summary judgment is required to set out in numbered paragraphs those factual propositions which entitle it to

---

1. Under the new collective bargaining agreement, the title of the bilingual deputies' position was changed from Deputy Sheriff–Bilingual (Spanish) to Deputy Sheriff–I Bilingual (Span-ish), but the bilingual deputies remain in a job classification separate from the rest of the deputies. (See Jan. 9, 1998 Defs.' Proposed Findings of Fact ("DPFOF") ¶¶ 9–11.)

judgment as a matter of law. *See* Local Rule 6.05(a)(1). In turn, the nonmoving party is required to file

> [a] specific response to the movant's proposed findings of fact, clearly delineating *only* those findings to which it is asserted that a genuine issue of material fact exists. The response must refer to the contested finding by paragraph number and must cite evidentiary materials which support the claim that a dispute exists.

Local Rule 6.05(b)(1) (emphasis in original). The nonmoving party may also "present additional factual propositions deemed to be relevant to the motion." Local Rule 6.05(b)(2). If the nonmoving party fails to respond to a proposed finding of fact, the Local Rules instruct the court to conclude that there is no genuine material issue as to that proposed finding. *See* Local Rule 6.05(d). The court is not required to consider a fact that the parties do not deem significant enough to include in their proposed findings.

In this case, plaintiffs argue that the court should have considered their evidence regarding the Sheriff's Department's overtime practices because this information was mentioned in their brief on summary judgment.[2] The question for the court is whether it should give plaintiffs the opportunity to correct their mistake.

■ The Seventh Circuit has made it clear that district courts are free to adopt an inflexible attitude toward enforcement of local rules. *See Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 923 (7th Cir.1994). Local rules of court have the force of law. *See Link v. Wabash R.R. Co.,* 291 F.2d 542, 545 (7th Cir.1961), *aff'd,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). The drafters of the Federal Rules of Civil Procedure intended that district courts be permitted to adopt the type of local rule at issue here. *See* Fed.R.Civ.P. 83 advisory committee notes, 1995 Amendments. In fact, the Seventh Cir-

cuit has reviewed our district's Local Rule 6.05 and found it "entirely proper." *Doe v. Cunningham,* 30 F.3d 879, 882 (7th Cir. 1994). But in this court's opinion, dismissal of an action due to a party's failure to follow local rules is a sanction that should be used sparingly.

■ Local Rules can become a "series of traps" for the unwary. *Woodham v. American Cystoscope Co.,* 335 F.2d 551, 552 (5th Cir.1964). There are a myriad of rules among the districts. The practitioner well-versed in our Local Rules (22 rules and 92 sub-rules) could easily be tripped-up if she finds herself litigating a case under the Local Rules of the Central District of California (31 rules and 196 sub-rules). Attorneys accustomed to appearing in state court face additional confusion, as state court practices may be inconsistent with a federal court's rules. *See, e.g.,* Wis. Stat. § 802.08 (establishing general procedures for summary judgment but not containing an equivalent to Local Rule 6.05).

Mechanical enforcement of local rules misconstrues their function in our justice system. It is perhaps unfortunate that they are even referred to as "rules," because the label confers upon them an inviolability not suited to their purpose. Local rules serve an important function—they assist in the efficient conduct of litigation. *See Herman v. City of Chicago,* 870 F.2d 400, 404 (7th Cir.1989). Local rules make courts more efficient by creating some uniformity among the hundreds of cases on the docket and, as with Local Rule 6.05, by enabling the court to more quickly spot key areas of dispute. Local rules also assist litigants by instructing counsel in how to effectively communicate with the court. But that's about as far as they go. Local rules should not be viewed as more than a means to an end. The ultimate goal of the court is, as far as possible, to arrive at a just resolution of the substantive dispute between the parties.

**2.** Plaintiffs' evidence would have been most appropriately set out as a response to defendants' proposed finding of fact ¶ 4, which describes the Sheriff's Department's alleged need to have Spanish-speaking personnel at the Jail to provide translation services. (*See* DPFOF ¶ 4.) As dis-

cussed *infra,* plaintiffs argue that the evidence regarding overtime demonstrates that this asserted legitimate nondiscriminatory reason for the Sheriff's Department's actions is really a pretext for discrimination.

Unfortunately, the current trend may be to inflate the significance of local rules. The court perceives that attorneys increasingly point out Local Rule violations as a way to gain a tactical advantage in litigation.[3] More often than not, this sort of nitpicking serves only to harass opposing counsel and prolong litigation. Such tactics are discouraged by our Local Rules themselves. Local Rule 1.01 provides that "the filing of motions alleging noncompliance with a rule ... should be reserved for egregious cases."

Similarly, dismissal of an action for local rule violations must be reserved for those extreme cases where a party's transgressions place an intolerable burden on the court or would make it an abuse of discretion to render any other judgment. For example, when a party fails to file proposed findings of fact in response to a summary judgment motion despite repeated warnings from the court. In such a situation, the court would be forced to comb the record on the party's behalf in order to defeat the motion, in effect becoming the party's counsel. This would be asking too much of the court. But in the case of less egregious violations, the court should practice a restraint commensurate with the rules' significance.

The violation currently before the court is not egregious. Plaintiffs made references to the overtime issue in their summary judgment response brief. It is reasonable to assume that the omission of these facts from the plaintiffs' proposed findings was inadvertent. The defendants will not be unduly prejudiced by consideration of this evidence as they have had adequate opportunity to address the matter in their briefs on reconsideration. It would not be in the interests of justice to dismiss this action when the court has an opportunity to more accurately assess its merits.[4] The court will reconsider its July 22, 1998 order granting summary judgment in favor of the defendants.

3. That is not the case here. None of the parties has mentioned the plaintiffs' failure to comply with the Local Rules.

4. The court notes that the outcome would be different had plaintiffs made no reference to the

## B. Motions Regarding Plaintiffs' Affidavits

Plaintiffs have also moved to submit affidavits from plaintiffs David Alcover–Saez, Sylvia Rodriguez, and Hector Pagan, in support of their motion to reconsider. The affidavits contain statements describing the Sheriff's Department's alleged practices regarding the treatment of bilingual deputies for purposes of overtime work assignments. The County Defendants have moved to strike these proposed affidavits, as well as the previously-filed Earle affidavit. At the same time, the County Defendants have also filed their own affidavits to support arguments in their response brief on reconsideration.

The County Defendants supply minimal argument and no legal authority in support of their motions to strike plaintiffs' affidavits. The County Defendants' objection to the Earle affidavit appears to center on a memorandum, attached to the affidavit as Exhibit 1, from then-Sheriff Richard Artison regarding the creation of the bilingual deputy positions. The County Defendants argue that because plaintiffs have failed to depose Richard Artison, plaintiffs are forbidden to draw any inferences from his memorandum. With regard to the proposed Alcover–Saez, Pagan, and Rodriguez affidavits, the County Defendants argue that the affidavits contain no new evidence, and therefore should be stricken.

All of the affidavits in question are relevant to the court's informed consideration of defendants' summary judgment motion. The County Defendants have filed their own affidavits to counter plaintiffs' assertions. The court can find no undue prejudice to defendants in considering plaintiffs' affidavits. The court will permit plaintiffs to file the Alcover–Saez, Pagan, and Rodriguez affidavits. The court denies the County Defendants' motion to strike the Earle affidavit.

overtime issue in their briefs. While a court should tolerate inadvertent violations of local rules, it should not permit a losing party to retry its case on a theory not previously presented.

## C. Reconsideration of Defendants' Summary Judgment Motion

■ Consideration of the additional evidence presented by plaintiffs affects the court's analysis of defendants' summary judgment motion. The July 22 order granting summary judgment rested on the court's perception that plaintiffs had presented insufficient evidence of discriminatory intent on the part of the County Defendants and the MDSA. Plaintiffs' evidence of disparate treatment regarding overtime is relevant to determining the existence of discriminatory intent on the part of the County Defendants, but it is not relevant to the intent of the MDSA.

Plaintiffs claim that the County Defendants' actions violated both 42 U.S.C. § 1981 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Plaintiffs claim MDSA violated § 1981 as well. Proof of discriminatory intent is necessary for both § 1981 and Equal Protection claims. *See Majeske v. Fraternal Order of Police Local Lodge No. 7*, 94 F.3d 307, 312 (7th Cir.1996) (§ 1981); *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir.1993) (Equal Protection). In order to determine discriminatory intent under § 1981 and the Fourteenth Amendment, courts apply the burden-shifting methodology first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Oates v. Discovery Zone*, 116 F.3d 1161, 1169–70 (7th Cir. 1997) (§ 1981); *McNabola*, 10 F.3d at 513 (Equal Protection).

Under the *McDonnell Douglas* approach, a plaintiff must first establish a prima facie case of discrimination. *See Oates*, 116 F.3d at 1170. The burden then shifts to the defendant to produce evidence of a legitimate nondiscriminatory reason for the adverse action. *See id.* If the defendant produces that evidence, the burden shifts back to the plaintiff to "prove by a preponderance of the evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Id.* (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

The elements of a prima facie case under § 1981 and the Equal Protection Clause are essentially the same. *See Bratton v. Roadway Package System, Inc.*, 77 F.3d 168, 176 (7th Cir.1996) ("[w]e analyze § 1981 discrimination claims in the same manner as claims brought pursuant to Title VII"); *Riordan v. Kempiners*, 831 F.2d 690, 695–96 (7th Cir. 1987) (prima facie case under Equal Protection Clause same as under Title VII). Plaintiffs must show that they are members of a protected class, that they are "'otherwise similarly situated to members of the unprotected class,' and [that they were] 'treated differently from members of the unprotected class.'" *McNabola*, 10 F.3d at 513 (quoting *McMillian v. Svetanoff*, 878 F.2d 186, 189 (7th Cir.1989)).

Defendants argue that plaintiffs cannot establish their prima facie case because they are not similarly situated to the other classes of deputy sheriffs employed by the county. Under defendants' reasoning, the fact that the bilingual deputies are the only deputies for whom Spanish proficiency is a prerequisite of the job makes a comparison with the remaining deputies impossible. But defendants' argument would prove too much.

Defendants' analysis is incorrect because it would preclude the bilingual deputies from ever proving a case of discrimination vis-a-vis the other deputies. Following the defendants' logic, the bilingual deputies could be subjected to extremely harsh employment practices not visited on other deputies and it would be impossible to prove discrimination simply because the bilingual deputies are required to speak Spanish, while the other deputies are not. Such a result is obviously contrary to the intent of § 1981 and the Equal Protection Clause.

The "Deputy Sheriff–Bilingual" classification is sufficiently similar to other deputy classifications to permit the comparison necessary for analyzing plaintiffs' prima facie case. Defendants admitted in their answer to the first amended complaint that, with the exception of the Spanish proficiency requirement, the Deputy Sheriff–Bilingual classification required "identical qualifications as those required for the classification of Depu-

ty Sheriff," the other deputy classification that had previously been limited to permanent assignment at the Jail. (*See* July 3, 1997 First Am. Compl. ("Am.Compl.") ¶ 17; July 17, 1997 Answer ¶ 9.) Yet the May 16, 1997 collective bargaining agreement excluded the Deputy Sheriff–Bilinguals from the classification merger that gave the Deputy Sheriffs broader (and according to plaintiffs, more desirable) job duties. While the County Defendants may have a legitimate nondiscriminatory reason for this action, plaintiffs' evidence is sufficient to satisfy the threshold for a prima facie case.

In response to plaintiffs' prima facie case, the County Defendants attempt to present a legitimate nondiscriminatory reason for their decision to exclude the bilingual deputies from the consolidation. The County Defendants cite the need for "a 24 hour per day presence of Spanish speaking personnel to address the needs of the ... new jail facility." (Jan. 9, 1998 Br. of Defs. Milw. Co./Robert Kliesmet ("Defs.' Br.") at 2.) [5] A 1992 memo from then-Sheriff Richard Artison to the County Director of Human Resources confirms the Sheriff's Department's perceived need for round-the-clock bilingual staffing at the time the Deputy Sheriff–Bilingual positions were created. (*See* Earle Aff., Ex. 1.) If left unrebutted, this evidence would negate any inference of discriminatory intent created by plaintiffs' prima facie case.

It is at this point that plaintiffs' evidence regarding overtime practices becomes relevant. To survive summary judgment, plaintiffs must produce evidence sufficient to raise a material question about whether the County Defendants' asserted need for 24–hour bilingual staffing is merely a pretext for discrimination. The apparent absence of evidence to rebut the County Defendants' staffing argument was the basis for the court's prior order granting summary judgment. The newly highlighted evidence changes that analysis.

Three of the plaintiffs have submitted affidavits attesting that prior to December 11,

1997, the bilingual deputies and their non-bilingual counterparts at the Jail were treated identically with regard to overtime; both received overtime assignments within and outside of their job classification. Overtime assignments are a significant source of income for the deputies. Since December 11, plaintiffs claim, all bilingual deputies have been denied all overtime assignments, while other deputies continue to receive overtime as in the past. Most important, plaintiffs assert that non-bilingual deputies are being given overtime assignments for coverage needs created by the absence of bilingual deputies, even though this practice has at times resulted in no bilingual coverage at the Jail for an entire shift.

This last allegation strikes directly at the County Defendants' asserted reason for excluding the bilingual deputies from the 1997 classification consolidation. The legitimacy of the County Defendants' claimed need for 24–hour bilingual staffing would be seriously undermined if it were shown that the goal was regularly sacrificed to provide non-bilingual deputies with overtime benefits denied to plaintiffs. Yet the County Defendants do not directly address this issue despite plaintiffs' clear emphasis on it in their brief in support of reconsideration. The County Defendants stress that it was a grievance filed by one of the plaintiffs that led the Sheriff's Department to eliminate the practice of assigning bilingual deputies to *mandatory* overtime *outside* their job classification. However, that evidence is not relevant to the issue of whether plaintiffs are also prohibited from obtaining mandatory and *voluntary* overtime assignments *within* their job classification. The County Defendants also suggest that "[i]f plaintiffs' argument holds[,] Milwaukee County would never be able to get a handle on runaway personnel costs in the face of a jail population crisis." (Aug. 19, 1998 Br. of Defs. Milw. Co./Robert Kliesmet at 3.) But plaintiffs are not arguing that Milwaukee County should be prevented from

---

5. The County Defendants assert that the need for 24–hour bilingual staffing at the Jail was the impetus for the initial creation of the bilingual positions in 1992, but they are not clear on whether that staffing need was also the reason for excluding the Deputy Sheriff–Bilingual classification from the consolidation under the 1997 collective bargaining agreement. For purposes of this motion, the court assumes the County Defendants intended the later assertion as well.

trimming overtime costs, they claim that other deputies are receiving overtime that logically should be allocated to them.

While the evidence regarding overtime practices is certainly not conclusive proof of discrimination on the part of the Sheriff or the County, it is sufficient to raise a material question regarding their intent. The Sheriff's Department may have very sound reasons for excluding the Deputy Sheriff–Bilingual position from the 1997 classification consolidation, but those reasons have not been presented at this point.

This evidence regarding overtime practices does not affect the court's prior conclusion regarding MDSA. In its July 22, 1998 order granting summary judgment, the court found there was insufficient evidence of discriminatory intent on the part of MDSA to proceed with the case against the deputies' union. Plaintiffs' evidence of disparate overtime practices in the Sheriff's Department sheds no light on the intent of MDSA. The court will not disturb the portion of its prior order granting summary judgment as to MDSA.

### D. Sheriff Kliesmet's Immunity to Suits Brought in his Official Capacity, and by Virtue of the Eleventh Amendment

The County Defendants raised several additional arguments in their original brief in support of summary judgment. The lack of properly presented evidence regarding discriminatory intent made it unnecessary for the court to reach those issues in its previous order. Having now found sufficient evidence of intent, the court will examine the County Defendants' remaining arguments.

The County Defendants urge that plaintiffs should be barred from suing defendant Sheriff Robert Kliesmet (hereinafter, Sheriff Kliesmet and his successors will be referred to collectively as "the Sheriff"). First, the

County Defendants assert, because plaintiffs have sued Robert Kliesmet in his official capacity as Sheriff of Milwaukee County, and Robert Kliesmet no longer holds that office, "he has no official capacity to sue or be sued." (Defs.' Br. at 4.) Next, the County Defendants urge that the Eleventh Amendment bars plaintiffs' suit against the Sheriff.[6]

#### 1. Official Capacity

■ The fact that Robert Kliesmet is no longer Sheriff does not preclude plaintiffs' suit against him in his official capacity. "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent ...." *Monell v. Dept. of Soc. Servs. of the City of New York,* 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Robert Kliesmet held the position of Sheriff of Milwaukee County at the time this action was filed, and thus was an appropriate person to sue in his official capacity. "When a public officer is a party to an action in his official capacity and during its pendency ... ceases to hold office, ... the officer's successor is automatically substituted as a party." Fed.R.Civ.P. 25(d)(1). Accordingly, the name of the current Milwaukee County sheriff shall be used in all subsequent captions for this action.

#### 2. Eleventh Amendment[7]

Having established that the suit against Sheriff Kliesmet is in effect a suit against the government entity he represents, the question becomes: Just what government entity does the Sheriff represent? The County Defendants argue that the Sheriff is a state

---

6. The County defendants also suggest that the Sheriff is protected from this suit under the doctrine of qualified immunity. Qualified immunity, however, is not applicable to suits against government employees in their official capacity. *See Feldman v. Bahn,* 12 F.3d 730, 732 (7th Cir. 1993).

7. The court notes that Judge Adelman of this district court, in a well-reasoned opinion, recently addressed the issue of Wisconsin sheriffs' immunity under the Eleventh Amendment. *See Abraham v. Piechowski,* 13 F.Supp.2d 870 (E.D.Wis.1998). While this court concurs in much of Judge Adelman's reasoning, the sheriff's functions at issue here are distinct from those in *Abraham,* and thus require a separate analysis.

official, and thus suits against him are barred by the Eleventh Amendment of the United States Constitution. Plaintiffs respond that the Sheriff is an officer of the County, and thus Eleventh Amendment immunity does not apply.

"The Eleventh Amendment largely shields States from suit in federal court without their consent ...." [8] *Hess v. Port Authority Trans–Hudson Corp.,* 513 U.S. 30, 39, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994). The immunity provided by the Eleventh Amendment extends to state officials sued in their official capacity. *See Scott v. O'Grady,* 975 F.2d 366, 369 (7th Cir.1992). Counties and similar municipal corporations, as well as the employees of such entities, however, are not afforded Eleventh Amendment protection. *See id.* at 370.

The Eleventh Amendment does not provide states with complete immunity. "[S]uits against state officials seeking prospective equitable relief for ongoing violations of federal law are not barred by the Eleventh Amendment ...." *Marie O. v. Edgar,* 131 F.3d 610, 615 (7th Cir.1997). In addition, Congress may choose to abrogate the states' immunity from certain types of actions seeking damages. *See id.*

■ Plaintiffs are seeking prospective injunctive relief for alleged ongoing violations of federal law. Their complaint requests an injunction preventing "the Defendants from performing and enforcing the collective bargaining agreement ... [and] requiring the Defendants to cease and desist from discriminating against the Plaintiffs with regards to the terms and conditions of their employment." (Am. Compl. at 16, ¶ B.) Even if the Sheriff were found to be a state official, plaintiffs' request for injunctive relief would not be precluded by the Eleventh Amendment.

■ Plaintiffs' damage claims, on the other hand, are potentially subject to Eleventh Amendment immunity. Plaintiffs seek compensatory damages and attorney fees for the Sheriff's alleged violations of § 1981, the Equal Protection Clause, and Wis. Stat. § 111.70. Our court of appeals has held that Eleventh Amendment immunity applies to suits for damages under § 1981, *see Rucker v. Higher Educational Aids Bd.,* 669 F.2d 1179, 1184 (7th Cir.1982), and the Equal Protection Clause. *See Townsend v. Edelman,* 518 F.2d 116, 120–21 (7th Cir.1975).

Which brings us back to the issue of whether the Sheriff is a state or county official. The County Defendants rely on *Soderbeck v. Burnett County,* 821 F.2d 446 (7th Cir.1987), for their assertion that Wisconsin sheriffs are state officials. On first blush *Soderbeck* may appear conclusive, as it holds that in Wisconsin "the sheriff acts on behalf of the state when fulfilling his constitutional obligations, not the county." *Id.* at 452. Recent Supreme Court decisions and significant changes in Wisconsin law, however, call into question *Soderbeck*'s continuing validity.

In *Soderbeck,* the Seventh Circuit examined whether Wisconsin sheriffs are considered policymaking officials of the state or county government. The plaintiff in the case was attempting to recover from Burnett County, Wisconsin, under 42 U.S.C. § 1983, for alleged constitutional violations committed by the county's sheriff. *See* 821 F.2d at 448. In analyzing the sheriff's proper categorization in the Wisconsin governmental structure, the court noted that "the sheriff is elected by the voters of the county wherein he serves and draws his salary from the county fisc, [and] staffs his office with personnel paid from county funds." *Id.* at 451. In the court's view, however, this evidence of the sheriff's ties with the county was outweighed by holdings in two Wisconsin Supreme Court decisions. *See id.* at 451. Those decisions, *Wisconsin Prof'l Police Ass'n v. County of Dane,* 106 Wis.2d 303, 316 N.W.2d 656 (1982), and *Andreski v. Industrial Comm.,* 261 Wis. 234, 52 N.W.2d 135 (1952), held that "the sheriff 'represents the sovereignty of the State' and is 'accountable only to the sovereign ....'" *Soderbeck,* 821

---

8. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

F.2d at 451 (quoting *Wisconsin Prof'l Police Ass'n*, 106 Wis.2d 303, 316 N.W.2d at 656; *Andreski*, 261 Wis. at 240, 52 N.W.2d 135). The *Soderbeck* court explained:

Although we might question the Wisconsin Supreme Court's classification of the county sheriff as an officer of the state, that court's determination based as it is on an interpretation of the Wisconsin Constitution is not subject to revision by this court.

*Id.* (citing *Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982)). Thus, the court concluded that Wisconsin sheriffs "act[ ] on behalf of the state." *Id.* at 452.

Recent Supreme Court decisions, applied in light of changes in Wisconsin law, indicate that the *Soderbeck* analysis places too much emphasis on the Wisconsin court's characterization of Wisconsin sheriffs. The Court in *McMillian v. Monroe County*, 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997), instructed that state law which merely labels sheriffs as state officials is not dispositive if a substantive analysis of the sheriffs' functions demonstrates that they act on behalf of the county. *See id.* at 786, 117 S.Ct. 1734. In addition, the Court in *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994), held that when evidence is conflicting regarding a government entity's status for Eleventh Amendment purposes, courts should focus on whether the state will be financially liable for the entity's actions. *See id.* at 47, 48, 115 S.Ct. 394. Prior to these decisions, the ties between Wisconsin sheriffs and counties was strengthened as Wisconsin law was amended to make counties liable for the official actions of their sheriffs. *See* discussion *infra.*

The Court in *McMillian* considered whether sheriffs in the State of Alabama should be considered state or county policymakers when acting in a law enforcement capacity. *See* 520 U.S. at 785–86, 117 S.Ct. 1734. To make such a determination, the Court instructed, courts should analyze "the actual function of a [sheriff], in a particular area." *Id.* at 786, 117 S.Ct. 1734. Implicit in

this is a requirement that courts analyze the relationship of a sheriff to the state and county when performing the specific function at issue. State law may be relevant to a court's determination because it may define the sheriff's functions. *See id.* But the *McMillian* Court was clear that little weight should be given to state law that "simply label[s] as a state official an official who clearly makes county policy." *Id.* A state supreme court's pronouncements regarding the role of sheriffs will be persuasive if they are based on substantive analysis of the sheriff's relationship to the county and state. Thus, in *McMillian,* the Alabama Supreme Court's determination that Alabama sheriffs are state officials when acting in their law enforcement capacity was persuasive because the state court's decision was based in part on an evaluation of the state's control over the impeachment of sheriffs and because the state court had held that "Alabama counties are not liable under a theory of *respondeat superior* for a sheriff's official acts that are tortious." *Id.* at 788–89, 117 S.Ct. 1734 (citing *Parker v. Amerson*, 519 So.2d 442, 442 (Ala.1987)).

In light of the *McMillian* Court's analysis, *Soderbeck,* and the Wisconsin Supreme Court decisions on which it relied, are no longer dispositive because they did not consider changes in Wisconsin law that now make counties liable for the acts of their sheriffs.[9] For more than 130 years, Article VI, section 4 of the Wisconsin Constitution stated that "the county shall never be made responsible for the acts of the sheriff." That provision was repealed in 1982. *See* 1981 Wis. Enrolled Jt. Res. 15. Subsequently, the state enacted Wis. Stat. § 895.46(1)(b), which "requires counties to pay civil judgments and taxable costs on behalf of all incumbent county sheriffs" found liable for acts committed while acting within the scope of employment. 1983 Wis. Act 6 explanatory notes.

A state law assigning financial responsibility for civil judgments against sheriffs is very significant in Eleventh Amendment analysis. *See Hess v. Port Authority Trans–Hudson*

---

9. The *Soderbeck* court noted this change, but was not required to consider it because it occurred after the events giving rise to the action. *See* 821

F.2d at 450–51 & n. 1, and the court's previous decision in the case, *Soderbeck v. Burnett County,* 752 F.2d 285, 292 (7th Cir.1985).

*Corp.*, 513 U.S. at 48, 115 S.Ct. 394. The Supreme Court in *Hess* held that when the status of a government entity for Eleventh Amendment purposes is ambiguous, such state law provisions can tip the scales. *See id.* at 47, 48, 115 S.Ct. 394. The issue in *Hess* was whether Eleventh Amendment immunity should extend to a commuter railroad corporation established by New York and New Jersey through a bistate compact. *See id.* at 35, 115 S.Ct. 394. Evidence of the corporation's status as a state or local entity was conflicting. *See id.* at 44, 115 S.Ct. 394. Some of the corporation's commissioners were required to be residents of New York City, but all commissioners were state appointees. *See id.* The functions performed by the corporation, the Court found, "are not readily classified as typically state or unquestionably local." *Id.* at 45, 115 S.Ct. 394. And, most significant to our analysis here, while the legislation creating the corporation did not refer to it as a state agency, state courts had repeatedly characterized the corporation as "an agency of the States rather than a municipal unit or local district." *Id.* Faced with these ambiguities, the Court stated, "[w]hen indicators of immunity point in different directions," courts should "home in on the impetus for the Eleventh Amendment: the prevention of federal-court judgments that must be paid out of a State's treasury." *Id.* at 47, 48, 115 S.Ct. 394.[10] Turning to the entity before it, the Court found the corporation was financially self-sufficient, *see id.* at 52, 115 S.Ct. 394, and that a judgment against it would not be paid by the state. *See id.* at 50, 115 S.Ct. 394. The Court concluded that the corporation was not entitled to Eleventh Amendment immunity. *See id.* at 32–33, 115 S.Ct. 394.

These legal developments call for an examination of the Sheriff's relationship to the state and county in this case. The Sheriff does have some significant ties to state government. The office of sheriff is established in the Wisconsin Constitution. *See* Wis. Const. art. VI, § 4, cl. (1). Only the governor has the power to remove a sheriff from office. *See* Wis. Const. art. VI, § 4, cl. (4); Wis. Stat. §§ 17.09(5), 17.11(1). The governor also controls the appointment of persons to fill vacant sheriff positions. *See* Wis. Stat. § 17.21(1). And of course, as noted in *Soderbeck*, the Wisconsin Supreme Court has said the sheriff "'represents the sovereignty of the State.'" *See* 821 F.2d at 451 (quoting *Wisconsin Prof'l Police Ass'n*, 106 Wis.2d 303, 316 N.W.2d at 657; *Andreski*, 261 Wis. at 240, 52 N.W.2d 135).

On the other hand, Wisconsin statutes describe sheriffs as "County officers." Wis. Stat. § 59.20(3)(a). County boards control sheriffs' salaries. *See* Wis. Stat. § 59.22(1)(a)2. In Milwaukee County, the county board has the final say over the Sheriff's Department budget. *See* Wis. Stat. § 59.60(7).

In addition to this general evidence of the Sheriff's relationship with the state and county, *McMillian* also requires the court to focus on the Sheriff's ties to those entities when performing the specific functions at issue in the present dispute. *See* 520 U.S. at 785–86, 117 S.Ct. 1734. The functions of the Sheriff involved here are his roles in creating new deputy positions, determining the work assignments of deputies, and managing the Jail. The County Defendants in this case concede that the county board controls the creation and classification of deputy sheriff positions. (*See* Feb. 27, 1998 Defs.' Reply Br. at 4.) With regard to the work assignments of deputies, while the Sheriff has exclusive control over any assignment within his constitutionally protected powers, *see Manitowoc County v. Local 986B*, 168 Wis.2d 819, 829, 484 N.W.2d 534, 538 (1992), a sheriff wishing to discipline a deputy for his performance in an assignment must obtain the approval of a grievance committee comprised of county board members or other county electors. *See* Wis. Stat. § 59.26(8)(b)1. As for management of the Jail, the Sheriff is responsible for administration of the facility, *see State ex rel. Kennedy v. Brunst*, 26 Wis. 412 (1870); *see also Wis-*

---

10. The Court also emphasized considering the effect denying Eleventh Amendment immunity in a particular instance would have on "the integrity retained by [the] State in our federal system . . . ." 513 U.S. at 39, 115 S.Ct. 394. This court does not find that factor to be significant in deciding whether the Sheriff is entitled to Eleventh Amendment immunity.

consin *Professional Police Assoc.,* 106 Wis.2d at 310–11, 316 N.W.2d at 659, but Milwaukee County is responsible for the costs of operating and maintaining the facility. *See* Wis. Stat. § 302.336(3).

These links to Milwaukee County might be sufficient on their own to support a finding that the Sheriff is a county official for purposes of this action. But any doubt caused by conflicting "indicators of immunity," *Hess,* 513 U.S. at 47, 115 S.Ct. 394, is resolved by the changes in Wisconsin law that now make the county liable for any judgment rendered against the Sheriff in his official capacity. *See* discussion *supra.* If plaintiffs prove their damages, Milwaukee County will have to pick up the Sheriff's share of the judgment. The County Defendants have not presented the court with any evidence that the State of Wisconsin may incur any financial liability for a judgment against the Sheriff. Accordingly, the court finds that the Sheriff is not entitled to Eleventh Amendment immunity for the claims in this action.

### E. Plaintiffs' State Law Claims Under Wis. Stat. § 111.70

Defendants also raise a number of arguments attempting to support the dismissal of plaintiffs' claims under Wis. Stat. § 111.70. In their complaint, plaintiffs allege that because the County Defendants intended to discriminate when they negotiated the collective bargaining agreement creating the Deputy Sheriff I–Bilingual classification, the County Defendants have entered into a collective bargaining agreement containing an illegal subject of bargaining. Such an agreement, plaintiffs contend, violates Wis. Stat. § 111.70.

■ First, the County Defendants argue that this claim is barred because plaintiffs failed to follow the statutory procedure for bringing such claims required by Wis. Stat. § 893.80. The County Defendants failed to mention this affirmative defense in their answer. "Generally, a failure to plead an affirmative defense results in the waiver of that defense and its exclusion from the case." 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1278, at 477 (2d ed.1990). It is too late in these proceedings

for the County Defendants to raise a § 893.80 defense.

■ Next, the County Defendants assert that plaintiffs failed to file their claim regarding an illegal subject of collective bargaining within the applicable one-year statute of limitations. The record shows, however, that the collective bargaining agreement was entered into on May 16, 1997 (*see* PPFOF at 9 ¶ d), and plaintiffs moved for leave to file an amended complaint to include their corresponding § 111.70 claim two weeks later. Plaintiffs' amended complaint was deemed filed on July 3, 1997. The County Defendants' statute-of-limitations argument has no merit.

The County Defendants also suggest that plaintiffs should be barred from bringing their § 111.70 claim because plaintiffs failed to exhaust the exclusive grievance remedies provided in the collective bargaining agreement. But the County Defendants have failed to supply the court with a copy of the relevant provisions in that agreement. The court is unable to determine if such provisions exist, much less whether they preclude plaintiffs' claims.

The County Defendants assert that Wisconsin law requires claims alleging violations of § 111.70 to first be filed with the Wisconsin Employment Relations Commission ("WERC"). The County Defendants are incorrect. Wisconsin law gives WERC and trial courts concurrent jurisdiction over alleged violations of § 111.70. *See* Wis. Stat. §§ 111.70(4)(a) and 111.07(1). "When both a court and an administrative agency have jurisdiction over resolution of issues in a dispute, a question of primary jurisdiction arises." *City of Brookfield v. Milwaukee Metro. Sewerage Dist.,* 171 Wis.2d 400, 420, 491 N.W.2d 484, 491 (1992). The emphasis in resolving a primary jurisdiction question is on whether the court or the administrative agency is best-equipped to address the dispute. *See id.* at 420–21, 491 N.W.2d at 492. Generally, administrative agencies are more adept at resolving factual issues in specialized subject areas, while courts have more expertise in resolving issues of law. *See id.*

In this action, the court will not be required to make factual determinations in esoteric subject areas. Plaintiffs are arguing that the County Defendants violated the state statute because § 111.70 makes it impermissible for a collective bargaining agreement to contain a clause that violates the Equal Protection Clause. (*See* Feb. 11, 1998 Pls.' Br. in Opp. at 21 n. 5.) The main issue for the court is a mixed question of law and fact: whether the provisions of the collective bargaining agreement violate the United States Constitution. WERC is not better qualified than the court to make that determination. The court will not dismiss plaintiffs' state law claims for failure to file them with WERC.

Finally, the County Defendants argue that "a labor agreement cannot work to deprive the sheriff of his ability to perform his immemorial duties as he deems appropriate." (Defs.' Br. at 6.) Although the specifics of their argument are difficult to discern, the County Defendants seem to suggest that the Wisconsin Supreme Court, if confronted with the issue, would find that the Wisconsin Legislature may not enact legislation prohibiting Wisconsin sheriffs from administering their offices in a manner that violates the United State Constitution. While it is true that the Wisconsin court has held that the legislature is constrained in its ability to regulate the state's sheriffs, those constraints are not all-encompassing. *See Heitkemper v. Wirsing*, 194 Wis.2d 182, 188–93, 533 N.W.2d 770, 773–75 (1995). The County Defendants have not persuaded this court that the Wisconsin Supreme Court would reach the conclusion they suggest.

## IV. CONCLUSION

The motion by plaintiffs Sergio Aleman, David Alcover–Saez, Jose A. Diaz, Hector Pagan, and Sylvia Rodriguez, for reconsideration of the court's July 22, 1998 order granting summary judgment is **GRANTED** as to defendants Milwaukee County and Milwaukee County Sheriff Robert B. Kliesmet, and **DENIED** as to defendant Milwaukee Deputy Sheriffs' Association.

Upon reconsideration of this court's July 22, 1998 order, the January 9, 1998 motion by defendants Milwaukee County, Milwaukee County Sheriff Robert B. Kliesmet, and Milwaukee Deputy Sheriffs' Association for summary judgment is **DENIED** as to defendants Milwaukee County and Milwaukee County Sheriff Robert B. Kliesmet. That portion of the court's July 22, 1998 order granting summary judgment as to defendants Milwaukee Deputy Sheriffs' Association shall remain undisturbed.

The motion by plaintiffs Sergio Aleman, David Alcover–Saez, Jose A. Diaz, Hector Pagan, and Sylvia Rodriguez for leave to file affidavits is **GRANTED**. The affidavits of David Alcover–Saez, Sylvia Rodriguez, and Hector Pagan shall be deemed filed as of the date they were submitted to the court.

The motion by defendants Milwaukee County and Sheriff Robert B. Kliesmet to strike plaintiffs' affidavits is **DENIED**.

In all future filings, the caption of this action shall be amended to substitute Leverett Baldwin, the current sheriff of Milwaukee County, as a defendant.